BARBARA BROWN, Respondent, *v.* AARON SNELL et al., Appellants.

A County Court, in exercising the authority conferred upon it by the Code (§ 30, sub. 6), to order the sale of an infant's real estate within the county, has the same general powers as the old Court of Chancery, and the provisions of the Revised Statutes, in reference to such sales (2 R. S., 194, 195, §§ 170–179), as well as the general rules of equity jurisprudence, are applicable. (REYNOLDS, C., dissenting.)

This jurisdiction is not required to be exercised at a stated term, but the court is always open for that purpose, save as otherwise directed by statute. (REYNOLDS, C., dissenting.)

A special guardian of an infant, appointed in proceedings for the sale of the real estate of the latter, owes a duty of absolute loyalty to the interests of the infant, so far as relates to the proceeds of the real estate that comes to his hands; he cannot, of right, when cited to account, hold the position of an opposing party, within the meaning of that provision of the Code (§ 31), declaring the County Court always open for business, where no notice to *an opposing party* is required, and he will not be presumed to claim to occupy that position. (REYNOLDS, C., dissenting.)

Even if the guardian in such case may be considered an "opposing party," this limitation, upon the authority of the court, to do business out of term, being simply for the benefit of such party, he may waive it, so as not to stand in that position, or he may so act as to be estopped from insisting upon the application of the provision to his case. (REYNOLDS, C., dissenting.)

A special guardian, after the coming of age of the infant, was cited to appear before a county judge and account, at a day not in a stated term, he appeared and rendered an account, without question, and signed a stipulation that the county judge might enter a decree for the amount his account showed to be due the infant, a decree was entered thereon, purporting on its face to have been made at a "County Court," directing payment of the amount, or, in default, that the bond of the guardian be prosecuted. *Held* (REYNOLDS, C., dissenting), that the decree was valid and binding, and, in default of payment, that an action upon the bond could be sustained thereon.

Also, *held* (REYNOLDS, C., dissenting), that, conceding the decree void, the accounting was, in effect, a settlement between the parties thereto, which was equivalent to, and rendered unnecessary a formal accounting by order of the court, and that an action upon the bond could be sustained thereon.

*Stillwell* v. *Mills* (19 J. R., 304) and *Salisbury* v. *Van Hoesen* (3 Hill, 77) limited and distinguished.

(Argued May 9, 1874; decided May term, 1874.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, setting aside an order nonsuiting plaintiff upon trial at circuit, and granting a new trial.

This action was brought upon a bond given by the defendant, Balde, as special guardian for plaintiff.

Proceedings were instituted under the statute providing for the sale of the real estate of an infant (2 R. S., 174, 175, §§ 170 – 179); for the sale of the real estate belonging to plaintiff and others, infants, as heirs of Marks Folts, deceased. The lands in question were situate in Herkimer county, and the proceedings were instituted in the Herkimer County Court. (Code, § 30, sub. 6.) Defendant Balde, was appointed special guardian of the infants, and as such, he gave the bond in suit, the lands were sold and the avails thereof went into his hands. After the said heirs became of age, they presented a petition to the county judge of Herkimer county, setting forth the facts, and alleging that Balde has refused to account to the petitioners for the moneys which had come to his hands as special guardian in the proceedings, claiming that the petitioners had, at the time of presenting their petition, obtained their majority, and praying that a citation issue to call Balde to account as such special guardian. Thereupon, the county judge issued a citation, citing Balde to appear before the "county judge of the county of Herkimer," at the office of the county judge, etc. The citation was duly served on Balde. On the return day Balde did not appear and the matter was adjourned. On the adjourned day Balde appeared, but not then being prepared to render his account, the matter was further adjourned till September 5th, 1866, at which day Balde appeared, and his accounts as special guardian were examined and found to be satisfactory, and thereupon Balde executed and delivered to the county judge, a stipulation whereby, after reciting that he had been duly cited to render his accounts as such special guardian, and had appeared in pursuance of such citation, and that having

examined the accounts he found due to the heirs, respectively, certain specified sums, and thereby also authorized the county judge to enter a decree, in his office, which should be "final and conclusive in the matter of the accounting." And, thereupon, a formal order or decree was entered, purporting to be "at a County Court, held in, and for, the county of Herkimer," reciting the previous proceedings and stipulation confirming the accounting which had been had, adjudging that Balde, as such special guardian, was indebted to the heirs, respectively, in the amounts stated, and ordering the same to be paid immediately, or that the guardian and his sureties be prosecuted. The amount found due, plaintiff not having been paid, this action was brought.

It was proved upon the trial that none of these proceedings and pleadings were held at a regular or adjourned term of the County Court, but before the county judge, at a time when he was not holding a stated term.

*Samuel Earl* for the appellants. The sureties of a special guardian cannot be sued upon the bond until the guardian has regularly accounted before a court having jurisdiction. (*Stillwell* v. *Mills*, 19 J. R., 304; *Salisbury* v. *Van Hoesen*, 3 Hill, 77.) Unless the proceedings before the county judge were valid and binding upon the sureties plaintiff was properly nonsuited. (Code, § 31; *Grocers' Nat. Bk.* v. *Clark*, 31 How. Pr., 115; *Kelly* v. *Thayer*, 34 id., 163; *Case* v. *Shepherd*, 2 J. Cas., 27; *Bigelow* v. *Stearns*, 19 J. R., 39; *Putnam* v. *Man*, 3 id., 204; *Adkins* v. *Brewer*, 3 Cow., 209; *People* v. *Sturtevant*, 9 N. Y., 269, 270.) No waiver, consent or stipulation can aid assumed jurisdiction. (*Germond* v. *People*, 1 Hill, 343; *Austen* v. *Searing*, 16 N. Y., 123; *Beach* v. *Nixon*, 9 id., 37; *Dudley* v. *Mayhew*, 3 id., 11; *Coffin* v. *Tracey*, 3 Cai., 129; *Heyer* v. *Burger*, Hoff., 1; *Davis* v. *Packard*, 7 Pet., 276; *Clayton* v. *Per Dun*, 13 J. R., 218.) The general denial of the answer put in issue every material allegation of the complaint. (Moak's Van Santvoord, 515; 38 N. Y., 263; 47 id., 430; 12 Abb., 446;

16 id., 302, and note; 45 How., 481.) Defendant was not obliged to deny specifically the jurisdiction of the county judge. (12 Barb., 575; Moak's Van Santvoord, 511.) No error in pleading will commit defendant to the judgment of a tribunal that had no jurisdiction. (*People* v. *Sturtevant*, 9 N. Y., 274; *Mannhardt* v. *Loderstrom*, 1 Bin., 138; *Moore* v. *Wait*, id., 219; *Holland* v. *Cassius*, 2 Dal., 368; *Bingham* v. *Cabot*, 3 id., 19; *Elliot* v. *Piersol*, 1 Pet., 340.) The sureties are only bound by an accounting of the guardian in court. (*Wiser* v. *Blackley*, 1 J. Ch., 607; *Stillwell* v. *Mills*, 19 J. R., 304.) No accounting having been had by the guardian, no action could be maintained on the bond. (*Beall* v. *New Mexico*, 16 Wall., 542; 2 Redf. on Wills, 92; Wms. on Exrs., Bk. V, chap. IV, p. 444.)

*John D. Kernan* for the respondent. The County Court had jurisdiction to compel the accounting. (Code, § 30, sub. 5.) A party cannot avail himself of facts proven on a trial if not embraced within the issue joined by the pleadings. (*Field* v. *Mayor, etc.*, 6 N. Y., 179.) The order or decree entered was sufficient on its face. (*Kelly* v. *Thayer*, 34 How., 164.) It could only be questioned by direct proceedings in the County Court to set it aside. (*Ch. Canal B.* v. *Judson*, 4 Seld., 254–269.) The citation calling the guardian to account was not a notice, nor was he an opposing party. (Code, § 31.) All irregularity in practice was waived by the guardian's voluntary appearance and stipulation for order, etc. (*Burkle* v. *Eckhart*, 3 Comst., 137.) If the order is good as to the guardian, it is conclusive as to the defendants. (2 Duer, 160; 3 Abb. Pr., 450.) The action can be sustained as a bill in equity to compel an accounting and payment over by the guardian, and upon his default that judgment be had against the other defendants. (*Cuddeboch* v. *Kent*, 5 Paige, 92.)

GRAY, C. When jurisdiction was conferred upon the Court of Chancery, upon the application of the next friend or

guardian of an infant seized of real estate, for the sale of the same, the act conferring the jurisdiction declared that the infant, from the time of the application, should be considered a ward of the court; and, for the purposes of the sale and the protection of the interests of the infant, it was made the duty of the court to appoint one or more suitable persons as its special guardians, in relation to the proceedings on such application, who should give to the infant a bond, in such penalty, with such sureties as the court should direct, " conditioned for the faithful performance of the trust reposed; for the paying over, investing and accounting for all moneys that should be received by such guardians, according to the order of any court having authority to give directions in the premises, and for the observance of the orders and directions of the court in relation to the trust; the orders and directions which it was made the duty of the court to make as the guardian of the infant, so far as related to the property, its proceeds and income, was for the application and disposition of the proceeds of the property, and for the investment of the surplus belonging to such infant, so as to secure the same for the benefit of such infant, and to direct a return of such investment and disposition to be made on oath, as soon as might be, and require accounts to be rendered periodically by any guardian or other person intrusted with the disposition or the income of such proceeds;" and if the bond of the guardian to the infant should be forfeited, to direct it to be prosecuted for the benefit of the injured party. (2 R. S., 194, 195, §§ 170, 171, 172, 173, 179.) After the jurisdiction thus conferred upon the Court of Chancery was, by the Constitution of 1846, transferred to the Supreme Court, jurisdiction was conferred upon the County Court of the respective counties in this State, " for the sale of real property of an infant situate within the county." (Code, as amended in 1851, § 30, sub. 6.) Under this jurisdiction, conferred upon County Courts, the plaintiff then being an infant and having real property situated in the county of Herkimer, the County Court of that county, in 1852, upon the petition of her

guardian, made in conformity with the statute referred to, for the sale of her property situate in that county, appointed the defendant Balde as her special guardian for that purpose, who, with the defendants Snell and Petrie as his sureties, gave their bond, conditioned as the statute required, and upon its being approved he, as guardian, sold her real property, thus confided to his charge. After the plaintiff arrived at full age, and in July, 1866, the county judge of that county, upon the petition of the plaintiff, representing that Balde had money in his hands arising from the sale of her property, which he neglected and refused to account for, cited him to appear before the County Court and render an account for all the moneys which had come to his hands as such special guardian. Balde appeared, and on the 5th day of September, 1866, with the plaintiff, examined the accounts of the money received by him on account of the sale of her property, confided to him as her special guardian ; when a balance was found due her from Balde, as such guardian, of $402.47, and Balde signed a stipulation to that effect, which he delivered to the county judge, and, thereupon, the County Court, as appears by the record, adjudged that sum to be due from Balde to the plaintiff, and ordered it to be paid at once, or Balde and his sureties be prosecuted. Balde neglected to pay, and the plaintiff brought this action to recover the sum thus settled upon as her due, and which the County Court adjudged to be due her; alleging in her complaint that an accounting was had, whereby it appeared that Balde was indebted to her for and on account of the moneys received by him, as such guardian, in the sum of $402.47; but because it appeared that this accounting was not had at any regular or adjourned term of the County Court, the plaintiff was nonsuited. When the jurisdiction of the Court of Chancery was increased by the authority conferred upon it to authorize the sale of infants' real estate, through agency of special guardians for that purpose, it was declared by statute that from the time of the application for the sale the infant should be considered a ward of the court so far as it related

to such property, its proceeds and its income. (2 R. S., 195, § 179.) And, for the exercise of its jurisdiction in this, as well as for other purposes, notwithstanding it had stated terms, it was always open. And when, by the Constitution of 1846, that court was abolished and equity jurisdiction conferred upon the Supreme Court, that court acquired the power to exercise its equity jurisdiction at all times, although it had stated terms ( *Wilcox* v. *Wilcox*, 14 N. Y., 575, 579), vesting power in the legislature to alter and regulate the jurisdiction and proceedings in law and equity, and now, in respect to the sale of an infant's real property, a County Court can exercise the same power over such property, situate within the county over which it has jurisdiction, that could have been exercised by the chancellor, or that can now be exercised by the Supreme Court (Code, § 31, sub. 6); and thus an infant is, in that respect, made the ward of the County Court, so far as it relates to the sale of such property, its proceeds and income. When the jurisdiction was conferred upon that court, along with it was given certain other jurisdiction theretofore exercised by the Court of Chancery, together with jurisdiction in matters of purely legal cognizance, with this provision, that " The County Court is always open for the transaction of any business for which no notice is required to be given to *an opposing* party." (Code, §§ 30, 31.) It is under this provision that the question now under consideration arises. It was because the time fixed by the citation for the appearance and accounting by Balde, as well as the time when he did appear and account, was not at one of the regularly appointed terms of the County Court, or at an adjourned term thereof, that the plaintiff was nonsuited at circuit. And hence the question arises whether Balde, the guardian, was, within the meaning of the act referred to, an opposing party. The object of the provision was to allow, or rather not to prevent the County Court from the exercise of the equity jurisdiction conferred upon it at times other than at its appointed terms, such as the Court of Chancery had theretofore done in regard to guardians and the like;

and to prevent issues and litigated matters between parties
having interests opposed to each other from being brought
before the court, except at its stated terms. Had the
citation and accounting occurred during the infancy of the
plaintiff, and while she was by statute a ward of the court, so
far as it related to the real estate sold and its proceeds and
income, Balde, acting as her special guardian, was a subor-
dinate of the court, whose only business so far as it related to
that property, was to carry out, under the supervision of the
court, its requirements in accordance with the statute and the
equitable rights of the ward, with absolute loyalty to her inter-
ests, and could not of right hold the relation of an opposing
party, and should not be presumed to claim to occupy that
relation when cited to account; or any other attitude than a
non-resisting and merely negligent party; and when, after
arriving at an age when her relation of ward to the court
ceased, she was, nevertheless, in her relation to Balde as her
special guardian, under its protection, so far as it related to
his accountability to her for the proceeds of the property
sold, during all of which time Balde's obligation of loyalty to
her interests in respect to the trust reposed in him, and his
accountability for the proceeds of the property sold remained
as before her relation of ward to the court ceased to exist;
while this equitable as well as legal relation of absolute
lute loyalty on the part of Balde, so far as it related to her
interests in the property sold, existed, he should not on account
of his negligence or refusal to account, be presumed as an
actor against her interests or an opposing party in any other
sense than one who, from other than a counter or hostile
interest, had neglected or refused to account, or that when
cited, any question would be raised placing him in the atti-
tude of a litigant or an opposing party. It was his duty to
account and the presumption is, that being cited to do so he
would, as he did in this case comply. If, without requiring
a citation, Balde had, as in duty bound, appeared and prop-
erly accounted, thus superseding the necessity, and hence the ·
requirement of a citation. No doubt can be entertained that

the court having, as is conceded, jurisdiction of the subject-matter, could have received the account and ordered it to be paid, or, in default, his bond be prosecuted; or, if he had been cited to account at a specified time other than at a stated term of the court, or show cause at a stated time during one of its regular terms, and he had appeared on the first day stated and rendered an account satisfactory to the plaintiff and the court, it clearly could have been received by the court and its payment decreed; and now that he did appear when cited, although the citation omitted the alternative, and without raising a question to be passed upon by the court, either as to whether or not he should be regarded as an opposing party, or a question being raised as to the account, or an item in it, rendered an account satisfactory to the plaintiff. The court had jurisdiction, as well as authority to direct its payment, as it did in the form of a decree, and in default the bond be prosecuted.

There is yet another ground upon which the judgment appealed from should be affirmed. · The defendant Balde has accounted with the plaintiff for the proceeds of the sale of her property made by him during her minority as her guardian, and as between themselves settled upon $402.47, as the balance due her. The fact that it was done in pursuance of a citation issued to Balde to appear before the County Court, to render an account for all moneys which had come to his hands as her guardian, made it as between themselves, none the less a settlement; there was no controversy between them, no question or item of the account was in any way settled by or passed upon by the court, or any concession made by Balde under duress. The question then arises whether, if the accounts of the guardianship have been settled by the parties, this action can be maintained; and for all the purposes of the question it may be conceded that the act of issuing the citation, and every act of the County Court in adjudging that amount to be due the plaintiff and directing the bond to be prosecuted was void. It cannot effect the question of the

adjustment, made by the parties themselves, and its effect upon the plaintiff's right to recover.

It is in substance insisted that because the defendants, Snell and Petrie, the sureties of Balde were not parties to the settlement, and no accounting was had by Balde in a court of competent jurisdiction, sanctioned and approved by such court, they are not liable to an action upon their bond. I have stated fully the several provisions of the statute conferring jurisdiction to order the sale of an infant's real property and establishing the relation of the infant to the court that it may be seen that the only object of the statute was to place the proceeds and income derived from the sale under the dominion of the Court of Chancery, between whom and the infant the statute established the relation of guardian and ward, that the court might, through the agency of a special guardian, to be appointed by the court for that purpose, protect the interests of the infant while incapacitated by want of age; and, in order to accomplish that object, the special guardian was required to give a bond to the infant, with sureties, for paying over, investing and accounting for all moneys that should be received by such guardian, according to the order of any court having authority to give direction in the premises; and the court, under whose supervision the special guardian was to act, was invested with authority to order the application and disposition of the proceeds of such property, and for the investment of the surplus belonging to such infant, so as to secure the same for its benefit; and in the event of the failure by the special guardian to comply with any order of the court for the application or disposition of the proceeds of the property the bond would, of course, become forfeited, and then it became the duty of the court to direct it to be prosecuted. The whole object intended to be accomplished by these several provisions, so far as the plaintiff is concerned, was to place the proceeds and income of her property sold under the guardianship of the court that it might, except for the necessary expenses of the proceedings and of her necessities, as adjudged by the

court, be delivered over when she became of full age. Then,
when her relation of ward as well to Balde, her special
guardian, as to the court her general guardian, so far as it
related to the proceeds and income of her property sold
ceased, and she became entitled to all the moneys received for
it by her special guardian, and to the bond given by him and
his sureties for the performance of the trust reposed in him.
It cannot be doubted that, upon an accounting as between
Balde and her, Balde had the right to pay and she to receive
the amount found due her and discharge the bond. The
court, as the guardian of the plaintiff, had the right to direct
when and what sum should be paid over by her special
guardian to or for her during her minority, and how and in
what way the surplus should be invested, and when and how
often the guardian should account. All this could have been
done during the infancy of the plaintiff, but after she became
of full age no court had the authority to parcel out the pro-
ceeds of the sale and direct it to be paid in such parcels as,
in its judgment, her necessities might require, or direct the
investment of the surplus. That was an authority that could
be exercised during her incapacity to take charge of her own
estate, and not afterward; and if the condition of the bond
had reference as well to an accounting to be directed after she
became of full age as to one directed during her incapacity,
by reason of her minority, to bind herself by her acceptance
of the account rendered and liquidating the balance, it very
clearly did not contemplate the direction of such an account-
ing, unless he who had been the special guardian had rendered
the direction necessary by his neglect or refusal to account
for the moneys received by him. The proceedings for an
accounting in such cases are always founded upon the neglect
or refusal to account. I never heard of an instance, and
doubt whether one can be cited, in which a petition or bill
for an accounting stated that he who had been the guardian
of the petitioner or of the complainant, as the case may be,
had rendered a just and satisfactory account of all the moneys
received by him (showing a given balance in his hands) and

praying that he be cited or ordered to account. In *Stillwell* v. *Mills* (19 J. R., 304) a settlement by the parties seems to have been regarded as an equivalent to an accounting before a court. In that case the court said : " It does not appear that the accounts of the guardianship have been settled by the parties, or that any proceedings have been had before the chancellor, requiring an account of the guardian. Until the accounts are thus settled, an action cannot be sustained on the bond," and then stated (citing 1 J. Ch., 107, as authority for the statement), that a guardian must be called to account before a surety is liable. The authority cited asserts no such proposition, the question was not in the case ; besides, in that case, the plaintiff was an infant, and the question was, whether a surety was holden where the bond was given in the name of the people, instead of the infant, and it was held, that the bond was, in that respect, amendable. ( *Wiser* v. *Blachley*, 1 J. Ch., 607.) In *Salisbury* v. *Van Hoesen* (3 Hill, 77), an action was brought upon a bond given by a guardian and his sureties, for performance of the trust reposed in the guardian, and for the observance of such orders and directions as the chancellor might, from time to time, make in the premises, in relation to such trust. The act of 1815, under which that bond was given, provided, that if it was forfeited, it might be prosecuted in any court having cognizance of the same, by the direction of the chancellor ; and, because the declaration did not aver that the accounts of the guardian had been settled by the parties, *or* that any proceedings had been had before the chancellor, it was held void on demurrer. Justice Bronson, delivering the opinion of the court, said the case could not be distinguished from *Stillwell* v. *Mills* (19 J. R., 304), where it was held that an action could not be maintained upon the bond of a guardian, until after the accounts had been settled by the parties, *or* there had been proceedings against the guardian in the Court of Chancery ; and, after thus disposing of the case, and all there was in it, he referred to the provision, that the bond, if forfeited, might be prosecuted in any court having cognizance

of the same, by the direction of the chancellor, and then said, "I think the declaration should show that there have been proceedings against the guardian in chancery." The case, as appears by the opinion of the learned judge, was not argued, but submitted without a brief on either side. The expression was not necessary to the decision of the case, and was not made, as was his habit, when he had arrived at a clear conclusion as to the law of any case before him. The bond sued upon was for the observance of such orders and directions as the chancellor might, from time to time, make in the premises, in relation to the trust, having undoubted reference to directions made from time to time, during the existence of the guardianship, for the benefit of the ward and its estate, when a failure to observe any order made would forfeit the bond, and then the chancellor could give directions for its prosecution. The provision could not have been intended to restrain a party of full age from exercising his discretion as to the prosecution of his defaulting trustee, merely because the trust had arisen out of their prior relation of guardian and ward. It is enough, for all the purposes of this case, that the plaintiff and her late guardian accounted with each other, and settled upon a balance due her ; if there was anything wrong in it, the sureties were not bound by it, and could have defended on that ground.

The judgment of the Supreme Court, setting aside the nonsuit, should be affirmed, and judgment ordered for plaintiff.

DWIGHT, C. This case involves the jurisdiction of the County Court under sections 29–32 of the Code of Procedure.

The facts of the case are, that the land of the plaintiff, then an infant, having been sold, and one John Balde having been appointed special guardian, the defendants, Snell and Petrie, executed, as Balde's sureties, a bond to the plaintiff, conditioned for the faithful discharge of Balde's duties, and "for the accounting for all moneys according to the order of

any court having authority to give directions in the premises, and for the observance of the orders and directions of the court," etc. In July, 1866, Balde was cited to account, and pay over to plaintiff, then of age, in the Herkimer County Court. He appeared, and consented to the entry of the final order passing his accounts, and this, if valid, fixed his indebtedness, and the liability of the defendants' sureties. These proceedings and order appear on their face to have been taken at a regular term of the County Court. On cross-examination of a witness, it appeared that none of the hearings took place at a regular or adjourned term of the court.

The language of the Code of Procedure is as follows: "Section 31. The County Court is always open for the transaction of any business, for which no notice is required to be given to an opposing party." The present proceeding, though statutory in its nature, appertains to the equity powers of the court. By the common law, an infant's land cannot be sold by an order of any court, but only through the agency of a special or general act of the legislature. (*Baker* v. *Lorillard*, 4 N. Y., 257; *Brevoort* v. *Grace*, 53 id., 245.) The statute law confers upon the Court of Chancery, the power to order a sale. (2 R. S., 149.) And section 30 of the Code, confers upon the County Court the like power, where the lands are within the county. The County Court, in exercising this provision, must have the same general powers within the county as appertain to the Court of Chancery, and the provisions of the Revised Statutes will be applicable as well as the general rules of equity jurisprudence.

The rule which requires a court of common law to do business at stated terms, has no application to the Court of Chancery. In the common law courts, the regular terms were derived from canonical prohibitions, which "exempted certain holy seasons from the turmoil of forensic litigations," such as the time of Advent and Christmas, giving rise to the winter vacation; the time of Lent and Easter, giving rise to that of the spring; the time of Pentecost, from which was derived

the third vacation. There was, finally, the long vacation between mid-summer and Michaelmas, for the season of harvest. In this way, there came to be four well known terms of court: St. Hilary, Easter, Holy Trinity and St. Michael. Strict judicial business could only be transacted at these terms, though, after a time, many incidental matters were transacted out of court. (3 Blackstone's Com., 275, 279; Spelman's Origin of Terms, *passim*.) The terms of court, thus, have a purely historical character, and there is no reason, in the nature of judicial business, why they should exist, nor why such business should be confined to them.

In equity courts, no such rules have ever prevailed. A chancellor could do business out of term as well as in term. Under our present law, though statutes provide for regular terms of equity courts, it is well settled, that the power to do business out of term still continues to a certain extent. (*Wilcox* v. *Wilcox*, 14 N. Y., 575.) These views show that there is *no rule of public policy*, requiring equity courts to do business in term time, whatever may be said as to acts done in the courts of common law. There is a reason of practical expediency for a distinction between the two courts, growing out of their business, of the attendance of jurymen, of the greater public interest in trials in courts of law, and of the more scientific and abstract nature of the questions submitted to equity courts. The section of the Code under consideration must, accordingly, be interpreted without any influence from a supposed public policy.

The guardian in the present case, is not to be regarded as an " opposing party." The statute authorizing the sale makes the infant a ward of court. (2 R. S., 195, § 179.) The guardian in that case is an officer of the court. ( *Wellesley* v. *Duke of Beaufort*, 2 Russell, 20; 2 Story's Eq. Jur., § 1338.) The court has full power, of its own motion, to call the guardian to account, without any proceedings on the infant's part. In fact, an accounting is simply a stage in the proceedings appertaining to the sale. The court having ordered the sale, intrusts to one of its own officers a detailed branch of

the business, and calls upon him from time to time to make accounts. The statute provides, that the court may require him to make "periodical" accounts, which would include the final accounting. It would have this power, without the express clause of the statute, as incidental to the sale and security of its proceeds. This is not in itself an adverse or hostile proceeding. This section of the Code does not refer merely to an *opposite* party, but to an *opposing* party. There must be a contest, a litigation to bring this clause into operation. It points to a well recognized distinction between contested and non-contested business. It simply means, that non-contested business may be done out of court, while the litigated business should be transacted in term time. But even if the section of the Code is applicable to the case at bar, its provisions may be waived. As there is no element of public policy in the rule, it must have been introduced simply for the benefit of an "opposing party." He may waive it so as to fail to be an *opposing* party, or may so act as to be estopped from insisting upon its application to his case. In the present instance, he is estopped, as he has executed a stipulation that the court was regularly constituted. It is not claimed that consent can confer jurisdiction, so as to create a court which, under no circumstances, would have jurisdiction without that consent. But, where there is an existing court, which, under one state of facts would have jurisdiction, and under another would not, a party may so act as to be estopped from denying the existence of the requisite fact. The principle may be illustrated by section 33 of the Code, giving jurisdiction to city courts over a corporation, which keeps within the city "an office for the transaction of business." The fact of keeping an office may be proved like any other fact in a court of justice, and one of the legitimate modes of proof is to show that the defendant is estopped from denying the fact. Suppose that a corporation defendant had admitted in the course of a trial that it kept such an office, would it not be bound by the admission?

If, in the present case, it be assumed that the court will
have jurisdiction if the facts show that the act be done in
term time, and will not, if it occur out of term, the defend-
ant may so conduct himself as to be estopped from showing
that the act was not done in term time. He proved by oral
evidence that it was not then done as a matter of fact; is it
not equally legitimate to show, under another rule of evidence,
that he is precluded from availing himself of this oral
testimony? There is abundant authority for this proposition.
In *Burckle* v. *Eckhart* (3 N. Y., 132), it is said that where a
particular matter, essential to jurisdiction, is averred by one
party, it may be admitted or denied by the other party.
When denied, it must be determined by the court upon *proof,*
*like any other question of fact.* It is the matter of which the
record and proof are evidence, which is the ground of juris-
diction. The rule is well stated in *Davis* v. *Packard* (6
Wend., 331, 333) and *Chichester* v. *Donegal* (Maddock &
Geldart, 375). In these cases, it is held that the admission
in court of a fact necessary to confer jurisdiction, precludes a
party from subsequently denying it. This is applied by
Chancellor WALWORTH, in *Davis* v. *Packard,* to cases where
jurisdiction is limited to particular classes of persons, particu-
lar subject-matter, or to the subject of the suit, or to the
parties only *under special circumstances.* In 1 Greenleaf on
Evidence (§ 210), the rule is laid down that in some cases
connected with the administration of public justice, an
admission is held conclusive on grounds of public policy.
*Robinson* v *Searson* (6 Manning & Granger, 762), is in point.
By a statute establishing an inferior court, exclusive jurisdic-
tion was given to it in cases involving five pounds or less,
where a defendant was trading within a given district. A.
and B., being jointly liable, A. represented to the plaintiff
before action brought, that B. had left the district and ceased
trading there. An action was brought in the Superior Court
accordingly, and it was held that B. was estopped by his
statement from showing that the case should have been brought
in the inferior court. (See, also, *Jefferies* v. *Watts,* 4 Bos. &

Pull. [1 New], 153.) That public policy demands the application of this rule in the present case is manifest, otherwise, the process of a court may be trifled with, and its time taken up to no purpose. The interests of justice require that a party who has, in a legal proceeding, admitted a fact necessary to confer jurisdiction, should be held to the ordinary consequences attending a judicial admission, and be estopped from denying its ordinary legal effect. (1 Greenleaf on Evidence, § 205.)

The judgment of the court below should be affirmed.

REYNOLDS, C. (dissenting). Not being able to concur with my brethren in the judgment to be rendered in this case, I propose to assign a few reasons for my dissent. The pleadings, the evidence, the course of the trial, the opinion of the Supreme Court, and everything connected with the controversy in that tribunal, indicates that the case was prosecuted and defended upon a theory to be entirely ignored in the judgment now to be pronounced, and the case made to rest upon a view never before considered or suggested. In the beginning of this controversy, every person connected with it appears to have agreed that Balde was to be regarded as an "opposing party" within the meaning of the law, and measures were taken by serving notice supposed to be requisite to bring him into the County Court of the county of Herkimer, to render his account as a special guardian, supposed to have been previously duly appointed by that tribunal. It was adjudged by the Supreme Court, that he was duly brought into the Herkimer County Court for the purpose named, and for the present, it is sufficient to say, that by an apparent decree of the Herkimer County Court, he was bound by his default as guardian in an amount of money, which it was the object of the present action to recover of the defendants as his sureties upon his official bond as guardian.

It is only necessary to refer briefly to the pleadings and proceedings in the Supreme Court, to show upon what theory the action was prosecuted, defended and decided in that court.

The complaint averred in due form the facts resulting in the appointment of Balde as special guardian for the sale of the real estate of the infant heirs at law of Mark Folts, and the giving of the bond by the present appellants as the sureties of Balde, that he should discharge his trust with requisite fidelity. It is then alleged that in this respect he failed in his duty, and that in July, 1866, proceedings on behalf of the plaintiff and others were duly taken in the Herkimer County Court, to compel Balde to account as special guardian, and in such proceeding it appeared that Balde had received $402.47, to which the plaintiff was entitled. It is then averred, with a certainty, at least to a " common intent," that afterward *at a term* of the said Herkimer County Court, held at Herkimer, on or about the 5th day of September, 1866, a decree was made in such matter of accounting, ordering and adjudging that Balde, as special guardian, was indebted to the plaintiff in the said sum of $402.47, and ordering the immediate payment thereof, or that Balde and his sureties be prosecuted on the bond, and the plaintiff refers to the papers and proceedings for said accounting, and the decree made thereon as a part of her complaint, and demanded judgment for the sum claimed to be due. The defendants, Snell and Petrie, denied " each and every allegation " in the complaint contained, and upon this issue the cause went to trial at the circuit.

The plaintiff gave evidence of the proceedings for the sale of the estate of the infant children of Mark Folts, resulting in the appointment of Balde as special guardian — the giving of the bond with the appellants as sureties — and the sale and conveyance of the property, with the approval of the Herkimer County Court ; and then also produced and gave in evidence all the papers and proceedings on the alleged accounting in the Herkimer County Court, resulting in the supposed decree of that court relied upon to fix the liability of the appellants.

It may be fairly assumed that my brethren agree with me, that the judgment of the Supreme Court cannot be sustained, *secundum allegata et probata,* but that it is proper to affirm

the order of the General Term for reasons not suggested by the record of the trial, or even alluded to by any judge of the court pronouncing the judgment or order appealed from.

Among other things, it is now suggested that Balde was not an "opposing party," within the meaning of the statute, requiring notice to bring him within the jurisdiction of the County Court. It is, perhaps, sufficient to say that exactly the contrary was assumed by all the parties, and in all the proceedings disclosed by the record, resulting in the judgment of the Supreme Court. But if this suggestion be inconclusive, I think an " opposing party " is not necessarily one who, when summoned into court, must come attended with martial music or any warlike preparation. An "opposing party," within the meaning of the statute, is one requiring *notice* in order to give jurisdiction over his person, and to a party entitled to such notice, the County Court is *never open* to receive him, except at one of its regular terms appointed by law. The question does not at all depend upon how disagreeable a person may make himself when he is once fairly in court, or how much or little contention may thereafter ensue. If *notice* be required, I think that determines the character of the litigant, so far as the present question is concerned. In this case Balde never got into any Herkimer County Court upon notice, or by any voluntary appearance, unless, indeed, that court is to be regarded as always open to him.

For reasons also before suggested, I do not think the judgment of the Supreme Court should be approved, upon any supposed analogy between the jurisdiction of a County Court and the late Court of Chancery, in respect to its control over the estates of infants. The case was tried upon no such theory. Moreover, the general jurisdiction of the late Court of Chancery has nothing, whatever, to do with the controversy, because the jurisdiction of the County Court is defined by the statute. A county judge or a County Court, with equity power, in the days of the Court of Chancery, was a thing unknown. Their creation and existence resulted from the destruction of the Court of Chancery with all its ramifi-

cations and supposed abuses. By the statute, the County Court is not open to an "opposing party," save at one of its regular terms, and there is no provision of the Constitution or the statute, that confers upon a county judge the equity power of a chancellor, which may be invoked at all times, under all circumstances and in all places.

It is further said that the plaintiff's action can be sustained as a bill in equity for an accounting by the guardian, and the order appealed from sustained for that reason. This can only be done if all the pleadings and proofs in the cause shall be ignored; for an accounting is alleged, in the complaint, to have been had and a decree thereupon made, by a court having competent jurisdiction; and all the evidence given by the plaintiff, on the trial, was offered to prove these allegations; and the instruments of evidence were all supposed to be matters of record, importing absolute verity. Beyond this there was nothing to show the condition of the accounts between the plaintiff and Balde, her guardian. If it be possible that, at the trial, the plaintiff might have changed front and proceeded for an accounting in equity, it is now quite sufficient to say, that no such attempt was made, and the appellants have not been required to meet any such form of action. What might have been said or suggested if they had been called upon to respond in that form, we have no means of knowing, and are not at liberty to conjecture.

Having said thus much in the effort to show that our judgment should be pronounced with some reference to the proceedings in the court below, I now proceed to show, if I can, that the nonsuit at the circuit was right, and the order of the General Term of the Supreme Court, granting a new trial, erroneous.

If I have great confidence in the correctness of my views upon this branch of the case, it may be due to the fact that none of my learned brethren propose to affirm the order of the Supreme Court upon any ground which that court, upon the record or otherwise, had under its consideration.

Having shown, to my own satisfaction at least, that the

order of the Supreme Court in this case should not be approved for any of the reasons upon which the judgment will, in fact, be given ; it is, I think, equally clear, that the action in the Supreme Court ought not to have been maintained upon the theory on which it was prosecuted, defended and decided.

Upon an inspection of the record in this case it appeared to me that the only question was, whether the County Courts, of all the counties in the State may, by agreement between the county judge and parties having business to be transacted in court, be opened at all times and in all places, and decrees and judgments rendered which are to be regarded by all other tribunals as judgments and decrees of a court of competent jurisdiction. The County Courts of the several counties of the State, are created by law, and cannot exercise any jurisdiction except in the manner and form authorized by the law of their creation, or such laws as have been enacted for their guidance. It is very plain that, when the limits, thus prescribed, are departed from, all orders and decrees, attempted to be made, are absolutely void. This would also follow if a court actually existed at the time and exceeded its appropriate jurisdiction; but here, the precise question is, whether, at the time it is alleged that a decree of the County Court of the county of Herkimer was made affecting the rights of the defendants, there was any such court in session, or, it may be said, even in existence.

The statute provides that so many terms of the County Court as the county judge may designate for that purpose, in a notice duly published, may be held for the trial of issues of law, and hearing and decision of motions and other proceedings at which no jury shall be required to attend. (Code, § 31.) And it is also provided that " the County Court is always open for the transaction of any business for which no notice is required to be given to an opposing party." The law, therefore, is that the County Court is not open for the transaction of any business which requires notice to be given to an opposing party, except at the times and places for holding

such court duly appointed according to law. In other words, in such cases there is no County Court of a county, except at its regular terms, when it can be legally opened by the county judge for the transaction of all business. A court that cannot be opened is precisely equivalent to no court at all, and during the period of its incapacity it may be said that no court exists by law; and the question seems to be whether one can be created by contract which may pronounce judicial decrees importing absolute verity. I am of the opinion that, under our laws, this cannot be done.

The facts upon which this case depends are very few and simple. The Herkimer County Court had, it is presumed, in due form entertained an application and took the proper proceedings for the sale of land belonging to infants, in which the present plaintiff had an interest; and upon that sale, or the proceedings for a sale, John Balde was appointed the special guardian of the infants and gave a bond, in which the defendants were his sureties, that he should faithfully perform the trust reposed in him "and pay over and account for all moneys and securities that should be received by him, according to the order of any court having authority to give directions in the premises, and should observe the orders and directions of the court in relation to such trust." It appears that Balde, the special guardian, failed to discharge his duty, so that on the 9th of July, 1866, a petition was presented to "Volney Owen, county judge of Herkimer county," on behalf of the plaintiff and others, to call Balde to an account. Upon this petition the county judge, to whom it was addressed, issued a citation to Balde to appear before "the County Court of the county of Herkimer," on the fourteenth of August following, to render his account as special guardian. This citation was duly served, and, on the return day, Balde did not appear, and the proceeding was adjourned to a future day; and on that and a further day, the 5th of September, 1866, Balde agreed, by written stipulation, that "the said county judge" might enter a decree "in his office" for several amounts stated in favor of the plaintiff and others,

the heirs of Mark Folts, deceased, and a decree thereon was apparently entered on that day, by virtue of the stipulation, by the County Court of the county of Herkimer, and, under this decree, the defendants, as the sureties of Balde, are now prosecuted in this action. The fact was proved on the trial, that, during all the time of these proceedings, there was no regular term of the Herkimer County Court in session, and that they were in fact had before the county judge at his chambers.

A question of pleading has been made, which I think can be disposed of in a word. The question does not arise upon any issue of *nul tiel record*, but whether at the time the supposed record was made, there was any "Herkimer County Court" in session, or in existence, authorized to make the record in question. That such a record was, in fact, made and filed, is not questioned, but it is denied that any County Court was open, in session, or then in existence, authorized to make it, and that is the issue. That Balde was "an opposing party," entitled to be heard at an open and regular session of the County Court, I cannot doubt, as has been already said, and such appears to have been the opinion of all parties. The petition of the plaintiff and others was addressed to the " county judge," and yet the citation summoned Balde to appear in the " County Court " when it was not in session, and all the subsequent proceedings were had before the county judge, at his chambers, and the stipulation of Balde only authorizes " the said county judge to enter a decree in his office on said accounting," etc., and unless the county judge was then the County Court, the decree entered upon the stipulation was *coram non judice* and void.

Assuming, as all parties did, that Balde was entitled to notice of the proceeding against him, it is very obvious that the County Court was not open, so that he was compelled to appear, save at a regular term, in due form of law appointed. If he had been thus summoned and appeared in court, so that the court having jurisdiction of the subject-matter had it also over his person, it is not unlikely that he might have waived any mere

question of formal practice or notice, that was personal to himself. But I am unable to discover that he was ever brought into any legally existing County Court of the county of Herkimer. The proof is to the contrary and is undisputed. I assume that, in accordance with law, there were regular terms of the County Court, for the county of Herkimer, duly appointed, and Balde was never summoned to appear in any such tribunal. Whatever he did was a mere private arrangement between him, his counsel and the county judge, to create a court out of season. This could not be done. It may not be that any actual wrong was done, and it cannot be assumed that any was intended. What I mean to affirm is, that courts of justice in which judgments are to be rendered, can only be created by law. If parties by contract create a tribunal of their own, it may amount to an arbitration, but it is not a court which the laws of this State can recognize in any form.

I am of the opinion that the order appealed from should be reversed, and judgment absolute ordered in favor of the defendants, with costs.

All concur for affirmance, except REYNOLDS, C., dissenting; EARL, C. not sitting.

Order affirmed and judgment absolute ordered against defendants.